## Mogel v. Kessler

*Martin L. Long,* for plaintiff; *W. E. Sharman,* for defendant.

SHANAMAN, J., March 22, 1934.—The pleadings are a bill in equity alleging a misuse by the mortgagee of a sci. fa. clause in a mortgage, and praying for an injunction against further prosecution by defendant of her writ of sci. fa. entered upon said mortgage; and an answer setting forth that the interest and principal sum of the mortgage are due and in default, and denying any misuse of defendant's legal remedies as mortgagee.

The issue is whether or not a mortgagee may prosecute a writ of sci. fa. sur mortgage to judgment, where the mortgage, in addition to the usual sci. fa. clause for recovery of the principal moneys secured in the event of a default in payment of interest, provides also that upon the death of the mortgagee interest shall cease and the bond and mortgage become null and void without the pay-

ment of said principal sum, and that the executors or administrators of the said mortgagee shall then satisfy the mortgage of record.

## Findings of fact

1. Katie Agnes Redcay and Davis Redcay were the mortgagors in a mortgage dated December 11, 1919, in the sum of $2,400, and Mary Catharine Kessler was the mortgagee. Said mortgage was recorded in the Berks County recorder's office, in mortgage book 319, page 53.

2. Katie Agnes Redcay having been remarried to Samuel Wolf, she and her husband sold the property, subject to said mortgage and for the further consideration of $2,266, to Edwin Mogel, the plaintiff in this suit, and conveyed the title to him on February 28, 1922, subject to the mortgage, by deed recorded in the Berks County recorder's office, deed book 533, page 499.

3. The premises in question, as described in the mortgage, are: [description of land].

4. Said mortgage recites, inter alia: "The said Katie Agnes Redcay and Davis Redcay, her husband, in and by their obligation or writing obligatory under their hands and seals duly executed, bearing even date herewith, stand bound unto the said Mary Catharine Kessler in the sum of $4,800, lawful money of the United States of America, conditioned for the payment of the just sum of $2,400, lawful money as aforesaid, together with interest thereon semi-annually at the rate of 5 percent per annum, which interest shall be paid as aforesaid to the said Mary Catharine Kessler during the full term of her natural life, and at and upon her death the said interest shall cease and the said bond and this mortgage become null and void without the payment of the said principal sum, and the executors or administrators of the said Mary Catharine Kessler shall satisfy the same of record and are hereby required so to satisfy the same of record. . . . Provided, however, and it is thereby expressly agreed, that if at any time default shall be made in the payment of interest for the space of 30 days after the same shall fall due . . . then and in such case the whole principal debt aforesaid shall, at the option of the said Mary Catharine Kessler, become due and payable immediately; and payment of said principal and all interest thereon may be enforced and recovered at once, anything therein contained to the contrary thereof notwithstanding." The mortgage also contains the usual sci. fa. clause, and clause for 5 percent attorney's commission.

5. The mortgage does not specify any set dates for the payment of interest.

6. The said Edwin Mogel, plaintiff, at the time of the conveyance to him, had actual knowledge of the conditions of said mortgage.

7. Plaintiff, Edwin Mogel, in addition to the payment of $2,266 for said property, has expended thereon more than $4,000 in permanent improvements.

8. Said plaintiff, Edwin Mogel, regularly paid the interest on said mortgage to defendant, to and including December 11, 1932.

9. The interest upon the mortgage was due December 11th and June 11th of each year.

10. Edwin Mogel defaulted on the interest due June 11, 1933, and remained in default for 30 days thereafter and more.

11. Plaintiff, on or about July 19, 1933, tendered defendant half the interest in arrears, which was refused.

12. Defendant, on July 19, 1933, and without prior demand other than the refusal to accept half the interest due, issued a sci. fa. sur mortgage in the Court of Common Pleas of Berks County, to no. 284, August term, 1933, at a time when the interest on said mortgage was in default, and the principal, by the terms of said mortgage, was therefore due and remained unpaid.

13. Plaintiff filed this bill in equity on August 25, 1933, to restrain further proceedings on the said sci. fa.

14. Plaintiff fell in default due to loss of wages on account of the general economic depression, and in order to enable himself to make partial payments on other debts of his.

15. There has been during the past year, and still exists, a very great State-wide and Nation-wide financial and economic depression.

16. On August 10, 1933, plaintiff, by his attorney, Martin L. Long, tendered to defendant, by her attorney, William E. Sharman, all back interest, together with interest on the overdue interest, the costs of the sci. fa. proceeding to no. 284, August term, 1933, and a reasonable attorney's fee, and the said tender was declined by Mary Catharine Kessler through her attorney. At the trial, plaintiff through his attorney renewed the tender as a continuing tender. The tender has not been accepted.

17. The taxes on the property are paid, with the exception of a road tax, which is provided for.

18. The defendant is adequately secured for future payments of interest by virtue of the value of the premises.

19. The defendant is willing, according to representations of counsel on both sides, to accept from plaintiff a new mortgage, otherwise similar to the fore-closed mortgage, on condition that it shall not contain a clause that the indenture shall be null and void in the event of her death, or that her executors or personal representatives shall in such event satisfy the mortgage.

## Discussion

Though the mortgage specifies no date for payment of interest, it calls for semi-annual payments, and therefore 6 months' interest was due after the expiration of 6 months from the date of the mortgage. Therefore the due dates for interest were June 11th and December 11th. The first payment made by plaintiff after buying the property subject to the mortgage was on June 9, 1922, 2 days before the due date. Thereafter, he generally paid the $60 interest for 6 months from 1 to 2 months in advance of the due date. Such commendable promptness on the part of the mortgagor did not operate, of course, either to advance or to retard the due date. An installment of interest in the amount of $60 fell due on June 11, 1933. By the terms of the mortgage, an actionable default did not exist until 30 days thereafter. Therefore, on July 11th, plaintiff, not having paid the said interest, was in default, and defendant under the terms of the mortgage was entitled to foreclose, and of course was not bound to accept the tender of half the back interest made to her by plaintiff on July 19, 1933. The sci. fa. therefore was lawfully issued on the same day, since the mortgage by its very terms provided that, as an additional security for the performance of the obligations of the mortgagor, the principal sum of $2,400 should become due on default in payment of interest,

We are of opinion, however, that the unusual nature of the mortgage under consideration removes this case at once from the general rule and distinguishes it from cases cited by defendant. Under the peculiar stipulations of this mortgage, we recognize a substantial interest in plaintiff, which entitles him to our equitable interposition as sought by his bill. The mortgage before us specifically declares that on the death of mortgagee the bond and mortgage shall become null and void without payment of principal, and that the personal representatives of the mortgagee shall satisfy it. The principal sum is never to fall due or become payable, except as a penalty. The mortgage, while providing that the interest shall be paid semi-annually, does not fix any date when

the principal shall ever fall due and become payable, except to say that in default of interest the principal shall become due and payable. This case, therefore, is clearly distinguishable from Warwick Iron Co. v. Morton, 148 Pa. 72. We do not mean in any way to weaken the principle established by that case, to the effect that a mortgage clause accelerating the maturity of the principal sum in the event of a failure to pay the interest at any interest-paying period is valid and enforceable and does not constitute a forfeiture. The present case is not the usual mortgage, and in our opinion presents a clear case of a forfeiture.

"It is an inflexible rule, and apparently applicable here, to relieve wherever the act to have been done, was payment of money. 'There is one case,' said Justice Chambre in Astley v. Weldon, (2 B. & P. 354,) 'in which the sum agreed for must always be a penalty; and that is where the payment of a smaller sum is secured by a greater.' . . . . But the character of the forfeiture is ascertainable from no particular words, but, as said by Lord Eldon in Astley v. Weldon, from the whole instrument. It is in fact only in cases of informal expression that questions of the sort arise; for where the parties themselves call it a penalty, relief is of course . . . . The difference in amount between the value of the mortgage and the sum intended to be secured by it, being in the ratio of more than three to one is enormous; and to hold the alternative for payment at the day to be stipulated damages in the form of a conditional sale instead of a penalty, would be unreasonable and unjust." Solomon v. Wilson, 1 Whart. 241, 245.

"It has been said somewhere, and by some legal luminary and wit, that equity abhors a penalty and a forfeiture, even as nature abhors a vacuum. Equity never declares or permits a forfeiture when it works a loss contrary to equity: . . . It is the province of equity to grant relief in the familiar cases of penalties attached to bonds and mortgages. It so acts upon the ground that, by compelling the obligor to pay interest during the time of his default, the obligee would be placed in the same situation as if the principal had been paid on the day. The general principle is that when a penalty is inserted merely to secure the enjoyment of a collateral object, the penalty is only accessory, and only to secure the damage really incurred; the true test being whether compensation can be made or not. If it can, and the penalty is to secure the mere payment of money, courts of equity will relieve the party upon paying the principal and interest . . . The true foundation of the relief is, that, as the penalty is designed as a mere security, if the party obtains his money or his damages, he gets all that he expected and all that justice requires, and this is a sufficient foundation. In reason, in conscience, and in natural equity, there is no ground to say that, because a man has stipulated for a penalty, in case of his omission to do a particular act (the real object of the parties being the performance of the act), if he omits to do the act, he shall suffer an enormous loss, wholly disproportionate to the injury": Merrill v. Trimmer, 2 Pa. C. C. 49, 52.

In the instant case, the principal and sole obligation is to pay $60 semiannually to defendant during her lifetime. The due payment thereof is a full and complete performance of all the obligations of the plaintiff. The contingent obligation to pay $2,400 in the event of an omission to meet any semi-annual payment of $60 is obviously a mere collateral security, because under the peculiar terms of this mortgage the $2,400 of principal never is to fall due except in the contingency of failure to meet a semi-annual interest payment. Clearly, we have here, therefore, a penalty of an enormously greater sum of money imposed for failure to pay a very much smaller sum, and such penalty ought in equity to be relieved against, upon the facts of the present record.

"The absence of precedents, or novelty in incident, presents no obstacle to the exercise of the jurisdiction of a court of equity. It is the distinguishing feature of equity jurisdiction that it will apply settled rules to unusual conditions and mold its decrees so as to do equity between the parties": 21 C. J. 35.

The cases cited by defendant, such as Holland v. Sampson, 4 Sadler 164, and Warwick Iron Co. v. Morton, 148 Pa. 72, are well decided but distinguishable. In those cases, the principal sum was a definite, certain, and owed obligation from the very inception of the mortgage. On a fixed, known, and stipulated date it would become due and ripe for payment. The effect of the failure to meet and perform the payment of interest was merely to accelerate the maturity or due date of the principal debt. Such stipulation, contained in the mortgage, was valid, and its execution by foreclosure was in no sense the delivery or enjoyment of a forfeiture. But in the present case the effect of the foreclosure is to pay to the defendant, out of the blue sky, a reward of over $2,000 in cash or real estate merely because the plaintiff defaulted in a payment of $60. What is this in substance but the purest instance of a forfeiture? Equity looks to the substance and will relieve.

Under the view we have taken, it becomes unnecessary to consider the applicability of the doctrine of Germania Life Ins. Co. v. Potter, 124 App. Div. 814, 109 N. Y. Supp. 435, cited by plaintiff, or the effect, if any, of the economic depression upon the rights of the parties in equity.

*Conclusions of law*

1. The particular mortgage in suit is, by virtue of its extraordinary terms, in effect merely a security for the payment of a fixed semi-annual charge on the land encumbered by said mortgage, effective during the lifetime of Mary Catharine Kessler and expiring with her death.

2. The authority to issue a sci. fa. contained in said mortgage is but a remedy whereby defendant may enforce payment of the said charge.

3. The enforcement of the payment of the principal sum of $2,400 provided in said mortgage would amount to a penalty, against which equity should, under the facts presented in this record, give relief.

4. Plaintiff is directed, within 30 days of the filing hereof, to pay to defendant all interest due on said mortgage, with interest upon all interest in default, and to pay all the costs of the action in sci. fa. sur mortgage brought to no. 284, August term, 1933, in the Court of Common Pleas of Berks County, and to pay a reasonable attorney's fee to defendant in the matter of said sci. fa., and to pay all the costs of the present suit in equity.

5. Upon the payment by plaintiff of the abovesaid sums, as required by this decree, defendant shall enter a discontinuance upon the docket of the said action of sci. fa.

6. Defendant is enjoined pendente lite against further prosecution of the said writ of sci. fa. sur mortgage.

And now, to wit, March 22, 1934, the prothonotary is directed to enter a decree nisi in accordance with the foregoing decision, and forthwith to give notice thereof to the parties or their counsel of record sec. reg.

From Charles K. Derr, Reading, Pa.